# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>       v.<br><br>AVX CORPORATION, et al.,<br>    Defendants.<br><br>COMMONWEALTH OF MASSACHUSETTS,<br>    Plaintiff,<br><br>       v.<br><br>AVX CORPORATION, et al.,<br>    Defendants. | CIVIL ACTION NOS.<br><br>83-3882-Y<br>83-3889-Y |

## SUPPLEMENTAL CONSENT DECREE WITH DEFENDANT CORNELL DUBILIER ELECTRONICS, INC.

TABLE OF CONTENTS

I.      BACKGROUND ............................................................................................... 3
II.     JURISDICTION ............................................................................................... 5
III.    PARTIES BOUND ........................................................................................... 5
IV.     DEFINITIONS.................................................................................................. 5
V.      STATEMENT OF PURPOSE ......................................................................... 7
VI.     PAYMENT OF RESPONSE COSTS ............................................................. 7
VII.    FAILURE TO COMPLY WITH SUPPLEMENTAL DECREE.................... 13
VIII.   COVENANTS BY PLAINTIFFS.................................................................... 14
IX.     RESERVATION OF RIGHTS BY PLAINTIFFS ......................................... 15
X.      COVENANTS BY SETTLING DEFENDANT............................................. 15
XI.     EFFECT OF SETTLEMENT/CONTRIBUTION ......................................... 18
XII.    ACCESS TO INFORMATION ....................................................................... 17
XIII.   RETENTION OF RECORDS.......................................................................... 17
XIV.    NOTICES AND SUBMISSIONS.................................................................... 19
XV.     RETENTION OF JURISDICTION ............................................................... 20
XVI.    INTEGRATION/APPENDICES ..................................................................... 20
XVII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ................... 20
XVIII.  CONDITIONAL CONSENT OF THE PARTIES .......................................... 21
XIX.    SIGNATORIES/SERVICE.............................................................................. 21
XX.     FINAL JUDGMENT ....................................................................................... 21

# I.   BACKGROUND

A.     The United States of America ("United States"), on behalf of the Administrator of the U.S. Environmental Protection Agency ("EPA"), filed a complaint in this matter against, among other parties, Cornell Dubilier Electronics, Inc. ("CDE"), on February 27, 1984, pursuant to, *inter alia,* Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, seeking injunctive relief, natural resource damages, and reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the New Bedford Harbor Superfund Site in Bristol County, Massachusetts (the "Site").

B.     On February 28, 1984, the Commonwealth of Massachusetts (the "Commonwealth") also filed a complaint against, among other parties, CDE, under, *inter alia,* Section 107 of CERCLA, 42 U.S.C. § 9607, and seeking abatement, natural resource damages, and reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Site.

C.     In response to the release or threatened release of hazardous substances at or from the Site, EPA undertook response actions at the Site pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and will undertake additional response actions in the future.

D.     This Supplemental Consent Decree ("Supplemental Decree") supplements the November 24, 1992 Consent Decree ("1992 Consent Decree") entered into with regard to the Site.  The 1992 Consent Decree required, *inter alia,* CDE to reimburse EPA and the Commonwealth for response costs and to pay natural resource damages associated with the Site. Except as specifically provided in this Supplemental Decree, all provisions of the 1992 Consent Decree otherwise remain in full force and effect.  The 1992 Consent Decree is attached hereto as Appendix A.

E.     Subsequent to the entry of the 1992 Consent Decree, EPA implemented the remedy for Operable Unit 2 ("OU2") at the Site, as set forth in the April 6, 1990 Record of Decision ("ROD"), as modified.  EPA completed the work for the OU2 remedy in May 2000.

F.     On September 25, 1998, EPA issued a ROD selecting the remedy for Operable Unit 1 ("OU1") at the Site.  The Commonwealth concurred on the OU1 selected remedy.  The remedy for OU1, as modified by six Explanations of Significant Differences ("ESDs") issued to date, includes: the dredging and disposal of contaminated sediment; construction of on-site containment facilities for dredged sediment contaminated with polychlorinated biphenyls; long-term monitoring and maintenance of the facilities; long-term monitoring of the Site; and institutional controls.

G.     Following the issuance of the OU1 ROD, EPA performed remedial design and remedial action activities from 1999 to 2004.  In 2004, EPA began full-scale dredging of PCB-contaminated sediment as part of the OU1 remedy.  Since that time, EPA has completed a significant portion of the OU1 remedy, including completing all hydraulic subtidal dredging, having removed approximately one million cubic yards of PCB-contaminated sediment.

Remaining work includes additional shoreline excavation and restoration, air monitoring, seafood monitoring, and operation and maintenance work.

H.     Pursuant to a cost-sharing agreement known as the "Superfund State Contract between the Commonwealth of Massachusetts and the U.S. Environmental Protection Agency for the Response Related to the New Bedford Harbor Site Upper and Lower Harbor Operable Unit, New Bedford, Massachusetts," as amended by a First Amendment last executed on August 25, 2000,  a Second Amendment last executed on August 20, 2002, a Third Amendment last executed on October 12, 2016, and a Fourth Amendment last executed on March 18, 2021 (collectively, "the Superfund State Contract"), the Commonwealth acting by and through its Department of Environmental Protection has been, *inter alia*, obligated to fund and has funded a portion of the OU1 remedy that EPA has performed, and the Commonwealth has been obligated to perform certain operation and maintenance activities.

I.     The United States and the Commonwealth assert that the conditions giving rise to claims against CDE, as set forth in the reservations of rights in Paragraph 17 of the 1992 Consent Decree, have occurred, thereby allowing Plaintiffs to seek from CDE the recovery of unreimbursed response costs.  Pursuant to Paragraph 16, this Supplemental Decree resolves claims that Plaintiffs now assert against CDE, which claims Plaintiffs contend are authorized or provided for in Paragraph 17 of the 1992 Consent Decree.

J.     In performing response action at the Site, EPA has incurred response costs and will incur additional response costs in the future.  Pursuant to the Superfund State Contract, the Commonwealth has incurred response costs and will incur additional response costs in the future.

K.     The United States alleges that Settling Defendant is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable for response costs incurred and to be incurred at the Site.

L.     The defendant that has entered into this Supplemental Decree ("Settling Defendant") does not admit to any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaints.  The Settling Defendant also does not admit that the conditions of Paragraph 17 of the 1992 Consent Decree have been satisfied.

M.     The United States has reviewed the Financial Information and Insurance Information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay response costs incurred and to be incurred at the Site.  Based upon this Financial Information and Insurance Information, the United States has determined that Settling Defendant has limited financial ability to pay for response costs incurred and to be incurred at the Site.

N.     At substantially the same time as this Supplemental Decree was lodged with the Court, a separate consent decree negotiated by the United States, the State of New Jersey, and CDE was lodged in the United States District Court for the District of New Jersey in *United States and State of New Jersey v. Cornell Dubilier Electronics, Inc.*, related to the Woodbrook Road Dump Superfund Site in South Plainfield, New Jersey ("Woodbrook Road Decree").  This Supplemental Decree and the Woodbrook Road Decree were negotiated as parts of a single ability-to-pay settlement.  As a result, the effectiveness of this Decree is contingent upon the approval and entry of the Woodbrook Road Decree and the effectiveness of the Woodbrook

4

Road Decree is contingent upon the approval and entry of this Decree. If either the Woodbrook Road Decree or this Supplemental Decree is not approved or entered by a Court, this Supplemental Decree shall be null and void and of no further effect.

O.    The United States, the Commonwealth, and Settling Defendant agree, and this Court by entering this Supplemental Decree finds, that this Supplemental Decree has been negotiated by the Parties in good faith, that settlement of this matter without further litigation and without the admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Supplemental Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

## II.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367 and 1345 and 42 U.S.C. §§ 9606, 9607 and 9613(b), has pendant jurisdiction over the claims arising under State law, and also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Supplemental Decree and the underlying complaints, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge entry or the terms of this Supplemental Decree or this Court's jurisdiction to enter and enforce this Supplemental Decree.

## III.    PARTIES BOUND

2.    This Supplemental Decree is binding upon the United States and the Commonwealth, and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Supplemental Decree.

## IV.    DEFINITIONS

3.    Unless otherwise expressly provided in this Supplemental Decree, terms used in this Supplemental Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Supplemental Decree or in any appendix attached hereto, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C § 9601 et seq., as amended.

"Chapter 21E" shall mean Massachusetts General Laws Chapter 21E.

"Commonwealth" shall mean the Commonwealth of Massachusetts.

"Cornell Facility" shall have the same meaning as in the 1992 Consent Decree and shall mean the land, the manufacturing plant and associated structures thereon (including subsurface structures), at 1605 East Rodney French Boulevard, New Bedford, Massachusetts, now or formerly bordered on the east by the west side of East Rodney French Boulevard, on the north by

the south side of David Street, on the south by the north side of Mott Street and on the west by a playground which borders on the east side of Cleveland Street.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Supplemental Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the U.S. Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the latest date on which this Supplemental Decree and the Woodbrook Road Decree have each been approved by this Court and the United States District Court for the District of New Jersey, respectively.

"EPA" shall mean the U.S. Environmental Protection Agency.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Financial Information" shall mean those financial documents identified in Appendix B.

"Insurance Information" shall mean those insurance documents identified in Appendix C.

"Interest" shall mean, for payments owed to the United States, interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a); and for payments owed to the Commonwealth, the rate set forth in M. G. L. c. 21E, § 13. The applicable rate of interest shall be the rate in effect at the time the interest accrues. The federal rate of interest is subject to change on October 1 of each year. Federal rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"MassDEP" shall mean the Massachusetts Department of Environmental Protection.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"New Bedford Harbor CDE Reopener Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Operation and Maintenance Expendable Trust" shall mean an expendable trust established by the Commonwealth pursuant to 801 CMR 50.00 to hold, administer and manage funds for the Commonwealth's operation and maintenance obligations at the New Bedford Harbor Superfund Site arising under the Superfund State Contract, including any amendments thereto, or any successor or supplemental trust established by the Commonwealth for such purposes.

6

"Paragraph" shall mean a portion of this Supplemental Decree identified by an Arabic numeral or an upper- or lower-case letter.

"Parties" shall mean the United States, the Commonwealth, and the Settling Defendant.

"Plaintiffs" shall mean the United States and the Commonwealth.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Section" shall mean a portion of this Supplemental Decree identified by a Roman numeral.

"Settling Defendant" shall mean Cornell Dubilier Electronics, Inc. ("CDE").

"Site" or "New Bedford Harbor Site" shall mean the New Bedford Harbor Superfund Site, located in portions of New Bedford, Acushnet, and Fairhaven, Massachusetts, including the Acushnet River Estuary, New Bedford Harbor, and any adjacent marine waters and sediments and shoreline areas, which were the subject of EPA's Remedial Investigation and Feasibility Study, including at least Areas I, II, and III as defined in 105 C.M.R. § 260.005 and as depicted on Exhibit A to the United States' Complaint. The Site does not include any sites to which MassDEP has assigned a release tracking number ("RTN") other than the New Bedford Harbor site to which MassDEP has assigned RTN 4-0000122, or any portion of the Cornell Facility.

"Supplemental Decree" shall mean this Supplemental Consent Decree and all appendices attached hereto. In the event of conflict between the Supplemental Decree and any appendix, the Supplemental Decree shall control.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Woodbrook Road Decree" shall mean that Consent Decree between the United States, New Jersey, and CDE relating to the Woodbrook Road Dump Superfund Site located in South Plainfield, New Jersey.

## V.     STATEMENT OF PURPOSE

4.     By entering into this Supplemental Decree, the mutual objective of the Parties is for Settling Defendant to make a cash payment to resolve its alleged civil liability for the Site under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607 and certain claims arising under State law, as provided in the Covenants by Plaintiffs in Section VIII, and subject to the Reservations of Rights by Plaintiffs in Section IX. Except as specifically provided in this Supplemental Decree, all provisions of the 1992 Consent Decree otherwise remain in full force and effect.

## VI.     PAYMENT OF RESPONSE COSTS

5.     **Payment of Response Costs.** Settling Defendant shall pay to Plaintiffs the principal amount of $4 million for conducting or financing response actions at or in connection

with the Site, including without limitation for the costs of such actions that the Commonwealth would otherwise be obligated to pay pursuant to the Superfund State Contract.  Payment of the principal amount to Plaintiffs shall be made in the amount of $3,600,000 to the United States and in the amount of $400,000 to the Commonwealth, as follows:

a.     **Payment to the United States**.  The part of the principal amount payable to the United States shall be paid in one payment of $3,600,000 in accordance with this Paragraph 5(a) and Paragraph 7(a) of this Supplemental Decree.  Such payment is due within 30 days after the Effective Date and shall include Interest.  Interest shall be calculated to begin on the date of lodging and continue through the date of payment.  Settling Defendant will contact DOJ at least 14 days before payment is due to identify the date on which Settling Defendant intends to make payment.  The Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the District of Massachusetts shall send shortly thereafter payment instructions for the principal payment due, plus the applicable Interest calculated using the payment date provided by Settling Defendant, with a copy to MassDEP.

b.     **Payment to the Commonwealth of Massachusetts.**  The part of the principal amount payable to the Commonwealth shall be paid in one payment of $400,000 in accordance with this Paragraph 5(b) and Paragraph 7(b) of this Supplemental Decree.   Such payment is due within 30 days after the Effective Date and shall include Interest.  Interest shall be calculated to begin on the date of lodging of this Supplemental Decree with the Court and continue through the date of payment.  Settling Defendant will contact the Massachusetts Attorney General's Office at least 14 days before payment is due to identify the date on which Settling Defendant intends to make payment.

6.     **Insurance Proceeds Escrow Account.**  Within 10 days of (a) a voluntary dissolution of the corporate entity that is CDE or (b) voluntary closure of CDE's insurance proceeds escrow account established by the Consent Decree entered by the United States District Court for the District of New Jersey on August 28, 2012, in *United States v. Cornell Dubilier Electronics, Inc.*, Case No. 2:12-cv-05407-JLL-MAH ("Escrow Account"), CDE shall provide notice to Plaintiffs of such event.  Within 30 days of provision of payment instructions to CDE, CDE shall pay to Plaintiffs any remaining proceeds in the Escrow Account.  Payments shall be split evenly between the Special Account for the New Bedford Harbor Site and the Operation and Maintenance Expendable Trust, on the one hand; and the Woodbrook Road Site, on the other hand.  Such payments to the Special Account for the New Bedford Harbor Site and to the Operation and Maintenance Expendable Trust shall be allocated 90% to the United States and 10% to the Commonwealth. Nothing in this Paragraph shall be read to interfere with CDE's retention of the right to dissolve the corporation in its discretion.

7.     **Payment Instructions.**

a.     Payments to the United States. Settling Defendant shall make the payments pursuant to Paragraph 5(a) of this Supplemental Decree at https://www.pay.gov in accordance with instructions provided to Settling Defendant by the FLU of the U.S. Attorney's Office for the District of Massachusetts after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, Site/Spill ID Number 0143, and DJ Number 90-11-2-32/5, which shall be used to identify all

payments required to be made in accordance with this Supplemental Decree. The FLU will provide the payment instructions to:

>Victor Whitworth
>Cornell-Dubilier Electronics, Inc.
>140 Technology Place
>Liberty, SC 29657
>vwhitworth@cde.com
>864-843-2626
>
>With a copy to:
>
>Jonathan M. Ettinger, Esq.
>Foley Hoag LLP
>155 Seaport Boulevard
>Boston, MA 02210
>jettinger@foleyhoag.com
>617-832-1195

on behalf of Settling Defendant.  Settling Defendant may change the individual to receive payment instructions on its behalf by providing written notice to DOJ and EPA, with a copy to MassDEP, of such change in accordance with Section XIV (Notices and Submissions).

b.      **Payments to the Commonwealth of Massachusetts.**  Settling Defendant shall make the payment pursuant to Paragraph 5(b) of this Supplemental Decree by electronic funds transfer in accordance with instructions to be provided by the Commonwealth using the following information:

>Commonwealth of Massachusetts, Office of Attorney General
>ABA#: 011075150
>ACCOUNT#: 00088882022
>SANTANDER BANK
>75 STATE STREET
>BOSTON, MA 02109
>TIN: 046002284

and shall include the following in the payment information: "EPD, Commonwealth v CDE." Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day.

8.      **Notice of Payment.**  At the time of each payment, Settling Defendant shall send a notice of the payment to the below recipients.  Any notice of payment shall refer to Site/Spill ID Number 0143 and Department of Justice case number 90-11-2-32/5 for this action, case name: *United States and Commonwealth of Massachusetts v. AVX Corporation, et al.*, No. 83-3882-Y, 83-3889-Y (D. Mass.) and to MassDEP RTN 4-0000122.  Notice to the Commonwealth and MassDEP recipients shall include all of the payment information stated in Paragraph 7(b) in addition to the amount of the payment.  Plaintiffs may change their respective recipients of the

payment instructions by providing written notice to Settling Defendant in accordance with Section XIV (Notices and Submissions).

EPA Region 1 by email at boal.maximilian@epa.gov and by mail to:

New Bedford Harbor Superfund Site
Remedial Project Manager
United States Environmental Protection Agency
Region 1, New England
5 Post Office Square, Suite 100
Boston, MA 02109

EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail to:

EPA Cincinnati Finance Office
26 Martin Luther King Drive
MS: WG32B
Cincinnati, Ohio 45268

EES Case Management Unit
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611
eescdcopy.enrd@usdoj.gov
Re: DJ# 90-11-2-32/5

Commonwealth by email to Betsy Harper, Environmental Protection Division at betsy.harper@mass.gov and by mail to:

Office of the Attorney General
Chief, Environmental Protection Division
One Ashburton Place
Boston, MA 02108

and

Chief Financial Officer
MassDEP
One Winter Street
Boston, MA 02108

9.     The total amount of each payment to be paid to the Special Account for the New Bedford Harbor Site pursuant to Paragraph 5(a) (Payments to the United States) and Paragraph 6 (Insurance Proceeds Escrow Account) shall be deposited by EPA in the New Bedford Harbor CDE Reopener Special Account to be retained and used to conduct or finance response actions at or in connection with the Site.  The payment to be paid to the Operation and Maintenance

Expendable Trust pursuant to Paragraph 5(b) (Payment to the Commonwealth of Massachusetts) and Paragraph 6 (Insurance Proceeds Escrow Account) shall be deposited by the Commonwealth in the Operation and Maintenance Expendable Trust to be retained and used to conduct or finance operation and maintenance at or in connection with the Site. If response actions are completed and funds remain in either the New Bedford Harbor CDE Reopener Special Account or the Operation and Maintenance Expendable Trust, each Plaintiff may distribute such remainder in accordance with respective applicable law.

    10.    **Letters of Credit.**

    a.    <u>Interim New Bedford Letters of Credit</u>. If the United States, in consultation with the Commonwealth, has provided notice to CDE that it should proceed with the interim letters of credit described in this subparagraph (a), then no later than fifteen (15) days after such notice or the date that this Supplemental Decree is signed by the Settling Defendant, whichever is later, CDE shall cause to be issued for the benefit of the Plaintiffs irrevocable letters of credit, one to the United States and one to the Commonwealth of Massachusetts (collectively, the "Interim New Bedford Letters of Credit"). The Interim New Bedford Letters of Credit shall (i) secure CDE's payment obligations under Paragraph 5 hereof, (ii) each have a stated amount, and provide for drawings thereunder in an aggregate amount, of $3,600,000 to the United States and $400,000 to the Commonwealth of Massachusetts, respectively, and (iii) be payable to or at the direction of the United States to the New Bedford Harbor CDE Reopener Special Account with respect to any payment due and payable to the United States, and to or at the direction of the Commonwealth of Massachusetts in accordance with the applicable payment instruction and notice requirements in Paragraph 7(b) and 8, respectively, or as otherwise directed in writing, with respect to any payment due and payable to the Commonwealth of Massachusetts.

    The initial term of the Interim New Bedford Letters of Credit shall be for a period of one (1) year from the date of issuance, and CDE shall cause such term to be renewed and extended for an additional one (1) year in accordance with subparagraph 10(e) below, unless earlier replaced by Final New Bedford Letters of Credit, as described in subparagraph (b) below. If either this Supplemental Decree is not lodged with this Court or the Woodbrook Road Decree is not lodged with the United States District Court for the District of New Jersey, in each case within a period of two (2) years from the issuance date of the Interim New Bedford Letters of Credit, the United States, in consultation with the Commonwealth, and CDE shall meet and confer to determine whether an extension of the Interim New Bedford Letter of Credit is appropriate.

    b.    <u>Final New Bedford Letters of Credit; Woodbrook Letters of Credit</u>. No later than thirty (30) days following the date as of which both this Supplemental Decree and the Woodbrook Road Decree shall have been lodged with the relevant court, CDE shall:

    i.    cause to be issued for the benefit of the United States and the Commonwealth, respectively, final letters of credit (the "Final New Bedford Letters of Credit" and, together with the Interim New Bedford Letters of Credit, the "NB Letters of Credit" or, collectively, the "NB Letters of Credit"), which shall replace the Interim New Bedford Letters of Credit and shall (1) each have a stated amount, and provide for drawings thereunder in an aggregate amount, of $3,600,000 to the United States and

11

$400,000 to the Commonwealth of Massachusetts, respectively, and (2) otherwise satisfy the requirements of the second sentence of subparagraph (a) above (it being agreed that if, at such time, the Interim New Bedford Letters of Credit then in effect satisfy such requirements for the Final New Bedford Letters of Credit, then CDE may elect instead to continue the Interim New Bedford Letters of Credit as the Final New Bedford Letters of Credit, and the Interim New Bedford Letters of Credit shall be deemed to be, and shall be maintained by CDE as, the Final New Bedford Letters of Credit); upon the issuance of separate Final New Bedford Letters of Credit, the Parties agree to cooperate to effect the termination and surrender of the Interim New Bedford Letters of Credit; and

      ii.     cause to be issued for the benefit of the United States and such other beneficiaries as may be provided in the Woodbrook Road Decree additional letters of credit (the "Woodbrook Letters of Credit"), which shall (1) provide for drawings thereunder in an aggregate amount of $4,000,000 and (2) shall secure CDE's payment obligations under the provisions of the Woodbrook Road Decree and contain such other terms and conditions with regard to duration, drawing conditions, payment and other matters, in each case as the parties thereto may agree therein.

      c.     <u>Maintenance of Final Letters of Credit</u>. CDE shall cause each of the Final New Bedford Letters of Credit and the Woodbrook Letters of Credit (together, the "Final Letters of Credit"), respectively, to be maintained until (i) in the case of the Final New Bedford Letters of Credit, the date when all of CDE's payment obligations under Paragraph 5 hereof have been fulfilled and (ii) in the case of the Woodbrook Letters of Credit, the date when all of CDE's payment obligations under the Woodbrook Road Decree that are secured thereby have been fulfilled; provided, however, that CDE shall no longer be required to maintain any of the Final Letters of Credit after the date when either consent decree is ruled upon and not approved by the relevant court. When CDE has made all such payments under the relevant consent decree secured by the relevant Final Letters of Credit, the Parties agree to cooperate to effect the termination and surrender of such Final Letters of Credit as promptly as practicable. In any event, Plaintiffs agree not to draw under the Final New Bedford Letters of Credit after CDE has made all required payments under Paragraph 5 of this Supplemental Decree.

      d.     <u>General Terms for NB Letters of Credit</u>. The NB Letters of Credit shall be issued for the benefit of the Plaintiffs in accordance with the terms of subparagraph (a) above, shall be irrevocable, and shall be issued by a bank or other financial institution or entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency. Upon this Court's entry of the Supplemental Decree and the United States District Court for the District of New Jersey's entry of the Woodbrook Road Decree (and only if both such events have occurred), the Plaintiffs may draw on their respective NB Letters of Credit if CDE fails to make a payment required under Paragraph 5 of this Supplemental Decree, and in such case only in the amount of such failed payment.

      The total amount available to be drawn under each NB Letter of Credit shall be reduced by any amounts drawn thereon. If requested by CDE, after CDE has successfully made a required payment under Paragraph 5, the Parties agree to cooperate to effect a reduction in the value of any relevant NB Letter of Credit by an amount matching the payment made by CDE.

      Upon any renewal or extension of any NB Letter of Credit otherwise in

accordance with this Paragraph 10, the amount available to be drawn thereunder shall not be required to exceed the maximum amount of CDE's remaining payment obligations under Paragraph 5 of this Supplemental Decree at such time.

        e.    <u>Replacement Letters of Credit</u>. At least thirty (30) days prior to the then-effective expiration date of any NB Letter of Credit (other than any NB Letter of Credit for which CDE, at least thirty (30) days prior to such expiration date, has obtained a replacement letter of credit that complies with this Paragraph 10, as contemplated below, and will be available to be drawn upon no later than the expiration of such NB Letter of Credit), CDE shall establish a segregated escrow account for the benefit of Plaintiffs (a "Segregated Account"). This Segregated Account shall receive the proceeds of any drawing under any particular early-expiring NB Letter of Credit prior to its expiration, as contemplated below, unless CDE establishes a replacement letter of credit, as contemplated below.

        The Parties acknowledge and agree that, with respect to any particular NB Letter of Credit requirement herein, CDE shall not be required to maintain any particular letter of credit with any particular issuer for any particular period so long as (subject to the drawing and escrow provisions below) it maintains a letter of credit satisfying the relevant requirements under this Paragraph 10 for such NB Letter of Credit at all relevant times. Accordingly, in the event that the issuer of any NB Letter of Credit shall only commit to provide such NB Letter of Credit with an expiration date, or shall terminate or decline to renew or extend the term thereof, prior to the time until which the relevant NB Letter of Credit is otherwise required to be maintained under this Paragraph 10, then CDE shall use its best commercially reasonable efforts to cause to be issued for the benefit of the Plaintiffs one or more replacement letters of credit (which may be provided sequentially) otherwise satisfying the applicable requirements of this Paragraph 10. If CDE shall fail to so procure such a replacement letter of credit at least thirty (30) days prior to the then-effective expiration date of the relevant early-expiring existing NB Letter of Credit, then the Plaintiffs may draw the remaining available amount under both existing NB Letters of Credit, and the proceeds thereof shall be deposited into a Segregated Account CDE established for the benefit of the Plaintiffs on terms consistent with this Paragraph 10 and the other terms of this consent decree (it being understood that all funds remaining in such Segregated Account shall be released to CDE upon the subsequent issuance of a replacement letter of credit in compliance with this Paragraph 10). The Parties acknowledge and agree that any such early termination or non-extension of a NB Letter of Credit shall not constitute a default under this Supplemental Decree, so long as CDE establishes a Segregated Account that receives the proceeds of any drawing under such NB Letter of Credit before it is terminated early or is not extended or replaced, as contemplated above.

## VII.   FAILURE TO COMPLY WITH SUPPLEMENTAL DECREE

      11.    **Interest on Payments.** If Settling Defendant fails to make either payment required by Paragraph 5 (Payment of Response Costs) by the required due date, Interest shall continue to accrue on any unpaid amounts due until the total amount due has been received. If Settling Defendant fails to make the payments required by Paragraph 6 (Insurance Proceeds Escrow Account) by the required due date under Paragraph 6, Interest shall continue to accrue on the unpaid balance from the date payment was due through the date of payment.

      12.    **Stipulated Penalty**

a.      If any amounts due to Plaintiffs under Paragraph 5 (Payment of Response Costs) and Paragraph 6 (Insurance Proceeds Escrow Account) are not paid by the required date, Settling Defendant shall be in violation of this Supplemental Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 11 (Interest on Payments), 1% of the amount of the late payment per day that such payment is late to each respective Plaintiff owed the late payment.

b.      Stipulated penalties are due and payable within 30 days after the date of the demand for payment of the penalties by Plaintiffs.  Settling Defendant shall make all payments due the United States at https://www.pay.gov and due the Commonwealth as directed by the Commonwealth, each in accordance with the procedures under Paragraph 7 (or as otherwise directed by the United States or the Commonwealth, respectively) and shall send notice of such payments in accordance with the procedures under Paragraph 8 (Notice of Payment) and to be deposited, retained and expended in accordance with Paragraph 9.  For payments due the United States, Settling Defendant shall indicate in the comment field on the https://www.pay.gov payment form that the payment is for stipulated penalties.

c.      Penalties shall accrue as provided in this Paragraph regardless of whether Plaintiffs have notified Settling Defendant of the violation or made a demand for payment but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment.  Nothing in this Supplemental Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Supplemental Decree.

13.      If the United States or the Commonwealth brings an action to enforce this Supplemental Decree, Settling Defendant shall reimburse the United States and the Commonwealth for all costs of such action, including but not limited to costs of attorney time.

14.      Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to comply with the requirements of this Supplemental Decree.

15.      Notwithstanding any other provision of this Section, Plaintiffs may in their unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Supplemental Decree.  Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI (Payment of Response Costs) or from performance of any other requirements of this Supplemental Decree.

## VIII.   COVENANTS BY PLAINTIFFS

16.      Except as specifically provided in Section IX (Reservation of Rights by Plaintiffs), in consideration of the payments made pursuant to Paragraphs 5 and 6 above, the United States and the Commonwealth covenant not to sue or take any other civil judicial or administrative action against CDE as authorized or provided for in Paragraphs 17 and 18 of the 1992 Consent Decree.  With respect to present and future liability, these covenants shall take effect upon the Effective Date.  These covenants are contingent upon the satisfactory performance by Settling Defendant of its obligations under this Supplemental Decree and the Woodbrook Road Consent Decree, including but not limited to, payment of all amounts due under both Consent Decrees and any Interest or stipulated penalties due thereon under both

14

Consent Decrees. These covenants are also conditioned upon the veracity and completeness of the Financial Information and the Insurance Information provided to EPA by Settling Defendant and the financial, insurance, and indemnity certification made by Settling Defendant in Paragraph 33. These covenants extend only to Settling Defendant and do not extend to any other person.

## IX.    RESERVATION OF RIGHTS BY PLAINTIFFS

17.    The United States and the Commonwealth reserve with respect to the Site, and this Supplemental Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Paragraph 16 (Covenants by Plaintiffs) of this Supplemental Decree. Notwithstanding any other provision of this Supplemental Decree, the United States and the Commonwealth reserve all rights against Settling Defendant with respect to liability for failure of Settling Defendant to meet a requirement of this Supplemental Decree. As provided in Paragraph 4 of this Supplemental Decree, and except as expressly modified in this Supplemental Decree, the United States and Commonwealth reserve all other rights and reservations against Settling Defendant that are set forth in the 1992 Consent Decree, including without limitation in Paragraphs 16 and 19 of the 1992 Consent Decree.

18.    Notwithstanding any other provision of this Supplemental Decree, the United States and the Commonwealth reserve, and this Supplemental Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Supplemental Decree, if the Financial Information or the Insurance Information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Paragraph 33, is false or, in any material respect, inaccurate.

## X.    COVENANTS BY SETTLING DEFENDANT

19.    Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the Commonwealth, or their contractors or employees, with respect to the Site and this Supplemental Decree, including but not limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.    any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Commonwealth Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c.    any claim pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or Commonwealth law, relating to the Site.

20.    Except as provided in Paragraph 22 (claims against other PRPs) and Paragraph 27 (Res Judicata and other Defenses), these covenants shall not apply in the event the United States or the Commonwealth brings a cause of action or issues an order pursuant to any of the

reservations set forth in Section IX (Reservations of Rights by Plaintiffs), other than liability for failure to meet a requirement of the Supplemental Decree or criminal liability, but only to the extent that Settling Defendant's claims arise from the same response action or response costs that the United States or the Commonwealth is seeking pursuant to the applicable reservation.

21.     Nothing in this Supplemental Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

22.     Settling Defendant agrees not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA or under Chapter 21E) that it may have for response costs relating to the Site against any other person who is a potentially responsible party under CERCLA or Chapter 21E at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

## XI.    EFFECT OF SETTLEMENT/CONTRIBUTION

23.     Except as provided in Paragraph 22 (claims against other PRPs), nothing in this Supplemental Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Supplemental Decree. Except as provided in Section X (Covenants by Settling Defendant), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613 and under Chapter 21E), defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Supplemental Decree diminishes the right of the United States or the Commonwealth, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2) and (3) or pursuant to Chapter 21E, to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

24.     The Parties agree, and by entering this Supplemental Decree this Court finds, that this settlement constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Supplemental Decree. The "matters addressed" in this Supplemental Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person, provided, however, that if the United States exercises rights under the reservations in Section IX (Reservations of Rights by Plaintiffs), other than liability for failure to meet a requirement of Supplemental Decree or criminal liability, the "matters addressed" in this Supplemental Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

25.     The Parties further agree, and by entering this Supplemental Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Supplemental

Decree constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

26.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Supplemental Decree, notify EPA and DOJ and the Commonwealth in writing no later than 60 days prior to the initiation of such suit or claim. Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Supplemental Decree, notify EPA and DOJ and the Commonwealth in writing within 10 days after service of the complaint or claim upon it. In addition, with respect to any suit or claim brought by or against it for matters related to this Supplemental Decree Settling Defendant shall notify EPA and DOJ and the Commonwealth within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial.

27.     In any subsequent administrative or judicial proceeding initiated by the United States or the Commonwealth for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the Commonwealth in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiffs set forth in Section VIII.

## XII.   ACCESS TO INFORMATION

28.     Notwithstanding any provision of this Supplemental Decree, the United States and the Commonwealth retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIII.   RETENTION OF RECORDS

29.     Until ten years after the Effective Date, Settling Defendant shall preserve and retain all non-identical copies of records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") now in its possession or control, or that come into its possession or control, that relate in any manner to its liability under CERCLA or Chapter 21E with respect to the Site, provided, however, that if Settling Defendant is potentially liable as an owner or operator of the Site, Settling Defendant must retain, in addition, all Records that relate to the liability of any other person under CERCLA or Chapter 21E with respect to the Site. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

30.     After the conclusion of the record retention period, Settling Defendant shall notify EPA and DOJ and the Commonwealth at least 90 days prior to the destruction of any such Records, and, upon request by EPA or DOJ or the Commonwealth, except as provided in Paragraph 31 (Privileged and Protected Claims), Settling Defendant shall deliver any such Records to EPA or the Commonwealth.

31. **Privileged and Protected Claims**

a.      Settling Defendant may assert that all or part of a Record is privileged or protected as provided under federal law, provided it complies with Paragraph 31.b, and except as provided in Paragraph 31.c.

b.      If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Defendant shall provide the Record to Plaintiffs in redacted form to mask the privileged or protected information only. Settling Defendant shall retain all Records that it claims to be privileged or protected until the United States has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendant's favor.

c.      Settling Defendant may make no claim of privilege or protection regarding:

(1)      any data regarding the Site, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or

(2)      the portion of any Record that Settling Defendant is required to create or generate pursuant to this Supplemental Decree.

32. **Business Confidential Claims**. Settling Defendant may assert that all or part of a Record submitted to the United States under this Section  is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b).  Settling Defendant shall segregate and clearly identify all Records or parts thereof submitted under this Supplemental Decree for which Settling Defendant asserts a business confidentiality claim.  Records that Settling Defendant claims to be confidential business information will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such Records without further notice to Settling Defendant.

33.      Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a.      not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since October 12, 2018, the date the United States notified CDE that it intended to reopen the 1992 Consent Decree, and that it has fully complied with any and all EPA and Commonwealth requests for information regarding the Site and Settling Defendant's financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and Commonwealth law;

b.      submitted to EPA financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to EPA and the time Settling Defendant executes this Supplemental Decree; and

c.      fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site, and submitted to EPA upon request such insurance policies, indemnity agreements, and information.

## XIV.   NOTICES AND SUBMISSIONS

34.     Whenever, under the terms of this Supplemental Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Supplemental Decree regarding such Party.

**As to DOJ by email:**            eescasemanagement.enrd@usdoj.gov

**As to DOJ by regular mail:**     EES Case Management Unit
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-11-2-32/5

**As to EPA:**                     Maximilian Boal, Senior Enforcement Counsel
U.S. Environmental Protection Agency—Region 1
5 Post Office Square, Suite 100
Mail Code: ORC 4-2
Boston, MA  02109-3912
boal.maximilian@epa.gov

**As to the Commonwealth by email:**

diane.baxter@mass.gov

**As to the Commonwealth by regular mail:**

Office of the Attorney General
Chief, Environmental Protection Division
One Ashburton Place
Boston, MA 02108

and

Chief Financial Officer
MassDEP

One Winter Street
Boston, MA 02108

**As to Settling Defendant:**                    Cornell Dubilier Electronics, Inc.
c/o Jonathan M. Ettinger, Esq.
Euripides Dalmanieras, Esq.
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
jettinger@foleyhoag.com
edalmani@foleyhoag.com

## XV.   RETENTION OF JURISDICTION

35.     This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Supplemental Decree.

## XVI.   INTEGRATION/APPENDICES

36.     This Supplemental Decree and its appendices constitutes the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Supplemental Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Supplemental Decree. The following appendices are attached to and incorporated into this Supplemental Decree:

"Appendix A" is the 1992 Consent Decree.

"Appendix B" is a list of the financial documents submitted to EPA by Settling Defendant.

"Appendix C" is a list of the insurance documents submitted to EPA by Settling Defendant.

"Appendix D" is a map of the Site.

## XVII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

37.     This Supplemental Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Supplemental Decree disclose facts or considerations that indicate that this Supplemental Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Supplemental Decree without further notice. In the event of the United States' withdrawal from this Supplemental Decree, the Commonwealth reserves its right to withdraw from this Supplemental Decree. The Commonwealth also reserves the right to withdraw or withhold its consent to the entry of this Supplemental Decree if comments received disclose facts or considerations which show that this Supplemental Decree violates state law. In the event of the Commonwealth's withdrawal from

this Supplemental Decree, the United States reserves its right to withdraw from this Supplemental Decree. If either the United States or the Commonwealth withdraws from this Supplemental Decree, Settling Defendant reserves its right to withdraw from this Supplemental Decree.

38.     If for any reason this Court should decline to approve this Supplemental Decree in the form presented, this Supplemental Decree is voidable at the sole discretion of any Party and the terms of the Supplemental Decree may not be used as evidence in any litigation between the Parties.

## XVIII.  CONDITIONAL CONSENT OF THE PARTIES

39.     This Supplemental Decree and the Woodbrook Road Decree were negotiated as parts of a single ability-to-pay settlement. As a result, the effectiveness of this Supplemental Decree is contingent upon the approval and entry of the Woodbrook Road Decree and the effectiveness of the Woodbrook Road Decree is contingent upon the approval and entry of this Supplemental Decree. If either the Woodbrook Road Decree or this Supplemental Decree is not approved and entered by a Court, this Supplemental Decree shall be null and void and of no further effect.

## XIX.  SIGNATORIES/SERVICE

40.     Each undersigned representative of Settling Defendant, the United States, and the Commonwealth certifies that he or she is authorized to enter into the terms and conditions of this Supplemental Decree and to execute and bind legally such Party to this document.

41.     Settling Defendant agrees not to oppose entry of this Supplemental Decree by this Court or to challenge any provision of this Supplemental Decree, unless the United States or the Commonwealth has notified Settling Defendant in writing that it no longer supports entry of the Supplemental Decree.

42.     Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Supplemental Decree.

## XX.  FINAL JUDGMENT

43.     Upon entry of this Supplemental Decree by the Court, this Supplemental Decree shall constitute the final judgment between and among the United States, the Commonwealth, and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 21st DAY OF _March_      , 2023.


_William M. Young_
United States District Judge

21